PURCELL v. PARKER



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:PURCELL v. PARKER

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 PURCELL v. PARKER
2020 OK 83
Case Number: 118328
Decided: 10/06/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 83, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



BETTY SUE ADAMS PURCELL; GILBERT LYNN PURCELL, JR.; SUSAN DENISE PURCELL PERINE; TWILA JUNE ADAMS MILLER; and BECKY LYNN MILLER CONTI, Petitioners/Appellants,
v.
TODD A. PARKER, and JESSICA D. PARKER, husband and wife; STATE OF OKLAHOMA, ex rel. OKLAHOMA WATER RESOURCES BOARD, CASILLAS OPERATING, LLC.; and SELECT ENERGY SERVICES, LLC. Respondents/Appellees.

APPEAL FROM THE MCCLAIN COUNTY DISTRICT COURT
Honorable Charles Gray, Trial Judge

¶0 The petitioners and respondents own real property in McClain County, Oklahoma, containing and abutting Colbert Lake (the Lake). The petitioners also own real property containing Colbert Creek, which is the sole source of water that feeds the Lake. The respondents sought a permit from the Oklahoma Water Resources Board (OWRB), to sell water from the Lake to oil companies for use in fracking operations. The only notice that the OWRB provided to the petitioners of the respondents' permit application was by publication in newspapers. The permits were issued, and the petitioners subsequently sought relief in the District Court of McClain County, arguing that they were not given proper and sufficient notice of the permit proceedings. The District Court dismissed the lawsuit in a certified interlocutory order, and the petitioners appealed. We granted certiorari to address the proper, constitutionally required notice to landowners in such proceedings. We hold that the notice given was inadequate, and the cause is reversed and remanded for further proceedings consistent with our holding.

CERTIORARI PREVIOUSLY GRANTED;
MOTION FOR ORAL ARGUMENT DENIED;
TRIAL COURT REVERSED AND CAUSE REMANDED.

Phillip O. Watts, Beverly Q. Watts, Edmond, Oklahoma, for Petitioners Miller and Conti.
Travis A. Pickens, Oklahoma City, Oklahoma, for Petitioners, the Purcells.
Jonathan Allen, Sara Gibson, Oklahoma City, Oklahoma, for Respondents, OWRB.
Kaylee P. Davis-Maddy, Oklahoma City, Oklahoma, for Respondents, the Parkers.


KAUGER, J.:
¶1 We granted review of the certified interlocutory order to address whether the notice by publication provisions of 82 O.S. 2011 §105.11[1] which relate to stream water permits are constitutionally adequate when applied to an affected landowner whose name and address are known or easily discoverable. We hold that the notice by publication provisions are constitutionally inadequate when applied to a known or easily discoverable landowner.
ALLEGED FACTS/PROCEDURAL POSTURE
¶2 The petitioners/appellants, Susan Purcell, Susan Pernine, Gilbert Purcell, June Miller, and Becky Conti (collectively petitioners/landowners/Purcells), and the respondents/appellees, Todd A. Parker and Jessica D. Parker (respondents/Parkers), own interests in real property in McClain County, Oklahoma. In the1950's, the landowners, and the Parkers, and/or their predecessors, granted land to the United States National Resources Conservation Service to create Colbert Lake (the Lake).
¶3 Both the petitioners' and respondents' real property currently contains and/or abuts the Lake. The Lake provides a water source for fire fighting, drinking water for livestock, and recreational pleasure for area residents. The approximately 270 acre farm owned by the petitioners' also contains Colbert Creek, the sole water source feeding the Lake.
¶4 On May 10, 2017, the Parkers entered into a "Right of Entry and Purchase Access" agreement (the Agreement) with Select Energy Services (Select), allowing Select, or their appointed representatives, the right of entry and the right of access to their real property for the purpose of water transfer from the Lake for Select's drilling/fracking operations. The use of the water was to commence on June 12, 2017.
¶5 Subsequently, Select applied for a provisional temporary permit (temporary permit)[2] from the Oklahoma Water Resources Board (the OWRB) to divert water from the Lake. On May 15, 2017, the OWRB issued a provisional temporary permit to Select without actual notice to the petitioners. The permit, in the amount of 81 Acre-Feet, allowed the diversion of 3200 gallons per minute from a Diversion Point located on the Lake for the purpose of oil, and gas drilling, and mining.
¶6 Subsequently, the Parkers applied for a long-term surface and stream water permit (Stream permit) to withdraw water from the Lake.[3] Although the petitioners' family had lived in the area for decades and were known by the Parkers, the Parkers provided the landowners notice by publication as required by 82 O.S. 2011 §105.11.[4] Because the petitioners did not timely protest, the OWRB did not hold a hearing/individual proceeding regarding the Parkers' permit application.[5]
¶7 On June 20, 2017, the OWRB issued to the Parkers the stream water permit authorizing the taking and use of 109 Acre-Feet of water per calendar year, at a rate not to exceed 3,360 gallons per minute. Although the petitioners did not receive actual notice of the permit applications, the stream water permit was issued after an OWRB meeting in which the petitioners apparently discovered and were given five minutes to comment.
¶8 On July 20, 2017, the petitioners filed a petition in the District Court of McClain County. The first claim of relief the petitioners sought was a declaratory judgment determining the stream use permit invalid based upon publication notice and insufficient actual notice to the petitioners. The second claim for relief was a declaratory judgment to nullify the temporary permit for lack of notice to the petitioners. The third and forth claims for relief were for judicial review of the stream permit and an accounting. On October 16, 2017, the petitioners added claims for conversion and unjust enrichment.
¶9 On December 14, 2018, the trial court entered a summary order denying judicial review of the OSWB proceedings, and also denying the constitutional challenges to the petitioners' notice pursuant to 82 O.S. 2011 §105.11.[6] On September 17, 2019, the trial court certified its summary order for interlocutory appeal. On February 10, 2020, we granted the landowners' petition for certiorari to review the certified interlocutory order to address the notice issue. The briefing cycle was completed on June 23, 2020. On June 30, 2020, the petitioners requested oral argument before the Court, which we hereby deny.
¶10 THE NOTICE BY PUBLICATION PROVISIONS OF 82 O.S.2011 §105.11 WHICH RELATE TO STREAM WATER PERMITS ARE
CONSTITUTIONALLY INADEQUATE WHEN THE AFFECTED LANDOWNERS ARE KNOWN OR READILY DISCOVERABLE.
¶11 The petitioners challenge the notice by publication process as it relates to the issuance of stream water permits. The respondents argue that the petitioners have no right to judicial review because no final agency order[7] was ever entered, and even if the petitioners had a right to review, the permit process is free from any prejudicial error.
A.
The Permit Process Involved In This Cause.
¶12 This cause concerns the question of sufficiency of the notice constitutionally required for permit applications for the appropriation and use of stream water. The term "stream water" includes lakes and reservoirs.[8] Appropriation of stream water is governed by the process set forth in 82 O.S. 2011 §§105 et. seq.[9] The Oklahoma Administrative Code (OAC), Title 785, Chapter 20, sets forth the guidelines for stream water permits to allow appropriation and use.[10] The statute and Administrative Code work together to govern the stream water permit process and proceedings.
¶13 The OAC states that notice of the filing of an application for the appropriation and use of stream water "shall be provided by the applicant as required by law and Board instructions."[11] Title 82 O.S. 2011 §105.11 requires notice by publication in a newspaper in the county in which the land is located and adjacent downstream counties, regardless of whether landowners or interested parties are actually known or easily discoverable. It states:
A. Except as otherwise provided by Section 105.13 of this title for limited quantity stream water permits, upon the acceptance of an application which complies with the provisions of Chapter 1 of this title, and the rules promulgated by the Oklahoma Water Resources Board pursuant thereto, the Board shall instruct the applicant to publish, within the time required by the Board, a notice thereof, at the applicant's expense, in a form prescribed by the Board in a newspaper of general circulation in the county of the point of diversion, and in a newspaper of general circulation published within the adjacent downstream county and any other counties designated by the Board once a week for two (2) consecutive weeks. Such notice shall give all the essential facts as to the proposed appropriation, among them being the places of appropriation and of use, amount of water, the purpose for which it is to be used, name and address of applicant, the hearing date, time and place if a hearing is scheduled by the Board before instructions to publish notice are given, and a thirty-day protest period as well as the manner in which a protest to the application may be made. At the time the Board provides the notice of application to the applicant, the Board shall publish on its website the applications and instructions for public notice, including the draft public notice prepared by the Board. The website publishing is in addition to, and not in lieu of, the requirement for applicants to publish notice in the newspaper. The time to protest shall run from the date of the first newspaper publication.
It required the OWRB to publish notice on their website in addition to publication in newspapers, it also gave any interested party the right to protest any application and appear and present evidence and testimony in support of such protest at the hearing thereon.[12]
¶14 Our decision today is limited to the issue of notice. This is not an administrative appeal of an individual proceeding,[13] nor an appeal from an administrative agency's final order.[14] Nor do we address the merits of the petitioner's protest, as it relates to whether the OWRB's decision regarding the granting of the permit was within its authority, and/or appropriate. Rather, this is a declaratory judgment action to address whether 82 O.S. 2011 §105.11,[15] and the rules of the OWRB in conjunction therewith, are constitutionally sufficient.[16] The issue is whether the notice by publication permit process was free from prejudicial error. If it is not, the permits granted thereunder are invalidated.
B.
Inadequacy Of Notice By Publication When Landowners Are Known Or Easily Discoverable. 
¶15 Title 82 O.S. 2011 §105.11 requires notice by publication in a newspaper in the county in which the land is located and adjacent downstream counties.[17] Undisputedly, the statutory procedure was followed in this cause. However, in Cate v. Archon Oil Co., Inc., 1985 OK 15, 695 P.2S 1352, we addressed the constitutionality afforded pre-procedural due process required when an oil and gas lease of real property is being sold at a sheriff's sale. The dispositive issue was not whether the statutory procedure was properly followed, but rather whether the procedure accorded with fundamental notions of due process.
¶16 The statute at issue in Cate, supra, was much like the statute at issue in this cause. It only required notice by publication. There, we recognized that notice by publication postings are designed primarily to attract prospective purchasers, and are unlikely to reach those who have an interest in the property. If the actual whereabouts of the parties are known, failure to afford personal notice to those who have an interest or estate in real property sought to be sold in satisfaction of a judgment, results in an unconstitutional exercise of jurisdiction insofar as the interest of the owner is affected.[18]
¶17 With regard to notice by publication we said:
¶8 Theoretically, publication may be available for all the world to see, but it is presumptuous to suppose that anyone could read all that is published to see if something may be reported which affects his/her property interest. Exclusive reliance on an inefficacious means of notification cannot be permitted . . . neither necessity nor efficiency can abrogate the rule that, within the limits of practicability, notice must be reasonably calculated to reach the interested parties. If the names of those affected by a proceeding are available, the reasons disappear for resorting to means less likely than the mails to apprise them of the pending sale. Mail service can be utilized as an inexpensive and efficient mechanism to enhance the reliability of the otherwise unreliable procedure of notice by publication. . . .
¶10 Notice is a jurisdictional requirement as well as a fundamental element of due process. Due process requires adequate notice, a realistic opportunity to appear at a hearing or judicial sale, and the right to participate in a meaningful manner before one's rights are irretrievably altered. The right to be heard is of little value unless adequate notice is given. Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise interested parties of the pendency of an action, and lack of notice constitutes a jurisdictional infirmity. (Citations omitted)
¶18 In Dulaney v. Okla. State Dept. of Health, 1993 OK 113, 868 P.2d 676, we addressed notice and the opportunity for an individual proceeding in the context of a landfill permit. Dulaney involved an applicant for a landfill permit from the Oklahoma State Department of Health. Landowners who owned real property and mineral interests adjacent to the application site, requested an evidentiary hearing which the Health Department denied before issuing the permit. The Landowners filed a lawsuit challenging the applicable administrative rules and statutes.
¶19 The permit applicant and Health Department argued that the Landowners had no statutory or constitutional right to notice or an opportunity to be heard. We held that minimum standards of due process require that administrative proceedings, which may directly and adversely affect legally protected interests, be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be heard. We also stated that:
¶18 Even if we were not convinced that adjacent landowners had constitutional rights sufficient to require the application of due process, we would be constrained to hold that, under the facts presented, these landowners are entitled to notice and an opportunity to be heard. Water rights are property which are an important part of the landowners' "bundle of sticks." The use and control of fresh water is a matter of publici juris, and of immediate local, national, and international concern. No commodity affects and concerns the citizens of Oklahoma more than fresh groundwater. Here, evidence was presented that drilling operations, which the mineral interest owners are entitled to engage in on the landfill site, could potentially contaminate the ground water supply - the same supply underlying the adjacent landowners' property and which they use for drinking purposes. It is a problem which must be explained. These landowners' water-related property interest alone requires that they be given notice and an opportunity to participate in a hearing whose outcome could affect their constitutionally protected rights. It would be incongruous to protect oil and gas interests and to ignore the protection of fresh water. If we continue to do so, the price of a barrel of water will exceed the price of a barrel of oil. [This has happened before. See R. Kerr, Land, Wood & Water, Ch. 3, p. 44 (Fleet Publishing Co. 1960).]
While the appropriation and use of water in this cause may or may not involve potentially contaminating the ground water supply, the same principles still apply and the same "bundle of sticks" exist as to the petitioners in this cause. Accordingly, notice must be reasonably calculated to provide knowledge of the existence of an adjudicative power and an opportunity to be heard.
¶20 To meet the statutory requirements for notice by publication of 82 O.S. 2011 §105.11, the newspaper must qualify as a legal publication.[19] Apparently, the notice by publication was given by publication in the Purcell Register. It has a circulation of 2,900.[20] McClain County, in which the petitioners reside, has a population of 39,985.[21] That means that there was a 7% chance that it might provide notice to interested parties in McClain County.
¶21 Section 105.11 also requires that publication be made in adjacent downstream counties. Assuming that was Garvin County, the population of Garvin County is 27,811.[22] There are four legal newspapers in Garvin County, The Wynnewood Gazette, the Pauls Valley Democrat, the Garvin County News Star, and the Lindsey News.[23] The newspapers have a total estimated circulation of 8800.[24] That means that there was a 31.64% chance that notice would be provided to all interested parties if they read all four newspapers. Regardless of the best possible scenario, i.e., combining the circulation to all the possible newspapers, the chances of an affected party receiving notice is less than 40%. With a less than 40% chance of seeing the notice in the newspaper, what would that chance be that a landowner would see the notice published on the OWRB's website? How would the landowner even know to check the website for such notice?
¶22 In Harvey R. Carlile Trust v. Cotton Petroleum, 1986 OK 16, 732 P.2d 432, a case involving standards of adequate notice in spacing proceedings before the Corporation Commission, we said, concerning notice by publication, that:
¶13 Publication notice is not reasonably calculated to provide actual knowledge of instituted proceedings. It is hence inadequate as a method to inform those who could be notified by more effective means such as personal service or mailed notice. Mail service is an inexpensive and far more efficient mechanism to enhance the reliability of notice than either publication or posting. When a party's name and address are reasonably ascertainable from sources available at hand, communication by mail or other means certain to insure actual notice is deemed to be a constitutional prerequisite in every proceeding which affects either a person's liberty or property interests. 
¶14 Because resort to publication service is constitutionally permissible only when all other means of giving notice are unavailable, we hold today that the face of an administrative proceeding must affirmatively show a diligent but unsuccessful effort to reach the affected party by better process. In short, courts may not presume publication service alone to be constitutionally valid when the judgment roll or record of an administrative proceeding fails to show that the means of imparting better notice were diligently pursued but proved unavailable. (Citations omittted), (Emphasis added)
¶23 Since Cate, Dulaney, and Carlile, supra, were promulgated, notice by publication has become even less effective. In Oklahoma, statewide daily newspaper circulation dramatically declined in 2019 when The Oklahoman, citing economic realities, further dropped delivery of 7000 subscribers and 3500 retail outlets, narrowing its previously confined 150 mile radius from Oklahoma City.[25] Even with the decline in newspaper circulation, if a landowner does not see the notice in the newspaper they are expected to know to regularly check the OWRB website in case their property is involved in the permit process.
CONCLUSION
¶24 Pursuant to Cate, Dulaney, and Carlile, supra, if the affected landowners are known, or reasonably discoverable, notice provided by publication results in an unconstitutional exercise of jurisdiction and a denial of due process. There is no excuse for failing to give personal notice of something that directly affects landowners when such landowners are known or easily discoverable.[26] Instead, 82 O.S. 2011 §105.11[27] ignores the precedents of this Court and the United States Supreme Court and clings to archaic procedures which have been invalidated for decades. Consequently, this cause is reversed and remanded for proceedings consistent herewith.[28]
CERTIORARI PREVIOUSLY GRANTED;
MOTION FOR ORAL ARGUMENT DENIED;
TRIAL COURT REVERSED AND CAUSE REMANDED.
Gurich, C.J., Darby, V.C.J., Kauger, Edmondson, Colbert, Combs and Rowe (by separate writing), JJ., concur;
Winchester and Kane (by separate writing), JJ., concur in part; dissent in part.

FOOTNOTES

[1] Title 82 O.S. 2011 §105.11 provides:
A. Except as otherwise provided by Section 2 of this act for limited quantity stream water permits, upon the acceptance of an application which complies with the provisions of Chapter 1 of this title, and the rules promulgated by the Oklahoma Water Resources Board pursuant thereto, the Board shall instruct the applicant to publish, within the time required by the Board, a notice thereof, at the applicant's expense, in a form prescribed by the Board in a newspaper of general circulation in the county of the point of diversion, and in a newspaper of general circulation published within the adjacent downstream county and any other counties designated by the Board once a week for two (2) consecutive weeks. Such notice shall give all the essential facts as to the proposed appropriation, among them, the places of appropriation and of use, amount of water, the purpose for which it is to be used, name and address of applicant, the hearing date, time and place if a hearing is scheduled by the Board before instructions to publish notice are given, and the manner in which a protest to the application may be made. In case of failure to give such notice in accordance with the rules and regulations applicable thereto within the time required, or if such notice is defective, the priority of application shall be lost; however, if proper notice shall be given within thirty (30) days after the Board has given him notice of his failure to give effective and proper notice, the application shall thereafter carry the original date of filing, and shall supersede any subsequent application to the same source of water supply. Any interested party shall have the right to protest said application and present evidence and testimony in support of such protest.
B. If the Board does not schedule a hearing on the application before instructing the applicant to publish notice, a hearing shall be scheduled by the Board upon receipt of a protest which meets the requirements of the Board's rules, the Board shall notify the applicant and protestant of such hearing.
The statute was amended effective November 1, 2019. The changes to the amended version provide in pertinent part:
A. Except as otherwise provided by Section 105.13 of this title . .. At the time the Board provides the notice of application to the applicant, the Board shall publish on its website the applications and instructions for public notice, including the draft public notice prepared by the Board. The website publishing is in addition to, and not in lieu of, the requirement for applicants to publish notice in the newspaper. The time to protest shall run from the date of the first newspaper publication.
B. In case of failure to give such notice in accordance with the rules and regulations applicable thereto within the time required, or if such notice is defective, the priority of application shall be lost; however, if proper notice is given within thirty (30) days after the Board has notified the applicant of his or her failure to give effective and proper notice, the application shall thereafter carry the original date of filing, and shall supersede any subsequent application to the same source of water supply. Any interested party shall have the right to protest said application and present evidence and testimony in support of such protest.
C. If the Board does not schedule a hearing on the application before instructing the applicant to publish notice, a hearing shall be scheduled by the Board upon receipt of a protest which meets the requirements of the Board's rules, the Board shall notify the applicant and protestant of such hearing.

[2] Title 82 O.S. 2011 §105.1 defines provisional temporary permit as well as other types. It provides:
As used in Sections 105.2 through 105.32 of this title:
1. "Definite stream" means a watercourse in a definite, natural channel, with defined beds and banks, originating from a definite source or sources of supply. The stream may flow intermittently or at irregular intervals if that is characteristic of the sources of supply in the area;
2. "Domestic use" means the use of water by a natural individual or by a family or household for household purposes, for farm and domestic animals up to the normal grazing capacity of the land and for the irrigation of land not exceeding a total of three (3) acres in area for the growing of gardens, orchards and lawns, and for such other purposes, specified by Board rules, for which de minimis amounts are used;
3. "Regular permit" means a permit granted by the Oklahoma Water Resources Board authorizing the holder to appropriate water on a year-round basis in an amount and from a source approved by the Board;
4. "Seasonal permit" means a permit granted by the Board authorizing the holder of such permit to divert available water for specified time periods during the calendar year;
5. "Temporary permit" means a permit granted by the Board authorizing the appropriation of water in an amount and from a source approved by the Board which does not exceed a time period of three (3) months, which does not vest in the holder any permanent right and which may be canceled by the Board in accordance with its terms;
6. "Term permit" means a permit granted by the Board authorizing the appropriation of water in an amount and from a source approved by the Board for a term of years which does not vest the holder with any permanent right and which expires upon expiration of the term of the permit; and
7. "Provisional temporary permit" means a nonrenewable permit which may be summarily granted upon administrative approval by the Board and which authorizes an appropriation of water in an amount and from a source approved by the Board. A provisional temporary permit shall not authorize an appropriation for a period of time exceeding ninety (90) days, shall not vest in the holder any permanent water right and shall be subject to cancellation by the Board at any time within its term in accordance with its provisions.
Title 82 O.S. 2011 §105.13 provides:
A. The Oklahoma Water Resources Board is authorized to issue, in addition to regular permits, seasonal, temporary, term or provisional temporary permits at any time the Board finds such issuance will not impair or interfere with domestic uses or existing rights of prior appropriators and may do so even where it finds no unappropriated water is available for a regular permit. All seasonal, temporary, term and provisional temporary permits shall contain a provision making them subject to all rights of prior appropriators. If any such permit is for water impounded in any works for storage, diversion or carriage of water, the applicant must comply with the provisions of Section 105.21 of this title.
B. Except as otherwise provided by this section, application, notice and administrative hearing as provided in Sections 105.9 through 105.12 of this title shall be required for all permits. A provisional temporary permit may be immediately and summarily granted upon administrative approval by the Board. Provisional temporary permits shall:
1. Not be effective for a period of more than ninety (90) days;
2. Be granted at the discretion of the Board; and
3. Be subject to such terms, conditions and rules promulgated by the Board for such purposes.
C. The Executive Director of the Board may administratively issue permits to use limited quantities of stream water. Notice, procedures and the maximum quantity authorized for limited quantity stream water permits shall be in compliance with rules promulgated by the Board. In no event shall the maximum quantity of water authorized in a limited quantity stream water permit exceed the amount of stream water that would otherwise be determined by the Board pursuant to Section 105.12 of this title.

[3] Title 82 O.S. 2011 §105.1, see note 2, supra, which defines the various types of permits.

[4] Title 82 O.S. 2011 §105.11, see note 1, supra.

[5] Minimum standards of due process require that administrative proceedings, which may directly and adversely affect legally protected interests, be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be heard. Dulaney v. The Okla. State Dept. of Health, 1993 OK 113, ¶9, 868 P.2d 676; Harry R. Carlile Trust v. Cotton Petroleum, 1986 OK 16, ¶10, 732 P.2d 438, cert. denied, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987); Cate v. Archon Oil Co., 1985 OK 15, ¶10, 695 P.2d 1352. Under the Oklahoma Administrative Procedures Act, 75 O.S. 2011 §250.3, this minimum standard is met with an Individual Proceeding which is defined as:
. . . the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature; ...
Title 75 O.S. 2011 §309 provides:
A. In an individual proceeding, all parties shall be afforded an opportunity for hearing after reasonable notice.
B. The notice shall include:
1. A statement of the time, place and nature of the hearing;
2. A statement of the legal authority and jurisdiction under which the hearing is to be held;
3. A reference to the particular sections of the statutes and rules involved; and
4. A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.
C. Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.
D. Deliberations by administrative heads, hearing examiners, and other persons authorized by law may be held in executive session pursuant to paragraph 8 of subsection B of Section 307 of Title 25 of the Oklahoma Statutes.
E. Unless precluded by law, informal disposition may be made of any individual proceeding by stipulation, agreed settlement, consent order, or default.
F. The record in an individual proceeding shall include:
1. All pleadings, motions and intermediate rulings;
2. Evidence received or considered at the individual proceeding;
3. A statement of matters officially noticed;
4. Questions and offers of proof, objections, and rulings thereon;
5. Proposed findings and exceptions;
6. Any decision, opinion, or report by the officer presiding at the hearing; and
7. All other evidence or data submitted to the hearing examiner or administrative head in connection with their consideration of the case provided all parties have had access to such evidence.
G. Oral proceedings shall be electronically recorded. Such recordings shall be maintained for such time so as to protect the record through judicial review. Copies of the recordings shall be provided by the agency at the request of any party to the proceeding. Costs of transcription of the recordings shall be borne by the party requesting the transcription. For judicial review, electronic recordings of an individual proceeding, as certified by the agency, may be submitted to the reviewing court by the agency as part of the record of the proceedings under review without transcription unless otherwise required to be transcribed by the reviewing court. In such case, the expense of transcriptions shall be taxed and assessed against the nonprevailing party. Parties to any proceeding may have the proceedings transcribed by a court reporter at their own expense.

H. Findings of fact shall be based exclusively on the evidence received and on matters officially noticed in the individual proceeding unless otherwise agreed upon by the parties on the record.

[6] Title 82 O.S. 2011 §105.11, see note 1, supra.

[7] Title 75 O.S. 2011 §318 provides:
A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.
2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.
3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.
B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.
2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.
C. Copies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition. Any party not named as a respondent in the petition is entitled to respond within ten (10) days of receipt of service. The court, in its discretion, may permit other interested persons to intervene.
D. In any proceedings for review brought by a party aggrieved by a final agency order:
1. The agency whose final agency order was made subject to review may be entitled to recover against such aggrieved party any court costs, witness fees and reasonable attorney fees if the court determines that the proceeding brought by the party is frivolous or was brought to delay the effect of said final agency order.

2. The party aggrieved by the final agency order may be entitled to recover against such agency any court costs, witness fees, and reasonable attorney fees if the court determines that the proceeding brought by the agency is frivolous.

[8] Okla. Admin. Code, Title 785:20-1-2 provides in pertinent part:
The following words and terms, when used in this Chapter of this Title, shall have the following meaning, unless the context clearly indicates otherwise: . . .
"Application" means a formal request to the Board and the first step required by law to acquire the right to perform or engage in activities regulated by the Board.
"Appropriation" means the process under 82 O.S. 1981, §§105 et seq., by which an appropriative stream water right is acquired. A completed appropriation results in an appropriative right.
"Appropriative right to stream water" means the right acquired under the procedure provided by law to take a specific quantity of public water, by direct diversion from a stream, an impoundment thereon, or a playa lake, and to apply such water to a specific beneficial use or uses
. . .
"Stream water" means water in a definite stream and includes but is not limited to water in ponds, lakes, reservoirs and playa lakes. . . .

[9] Okla. Admin. Code, Title 785:20-1-2, see note 8, supra.

[10] Okla. Admin. Code, Title 785:20-1-1 provides:
This Chapter of the rules is to set out the procedure and substantive requirements to establish appropriative rights to use stream water, to amend such rights, and provisions regarding loss of rights.

[11] Okla. Admin. Code, Title 785:20-5-1 provides:
(a) Application notice. Notice of the application, including hearing date, time and place if scheduled prior to notice, shall be provided by the applicant as required by law and Board instructions. Accuracy and adequacy of notice shall be the responsibility of the applicant.
(b) Proof of notice. Adequate proof that notice was provided as instructed by the Board shall be submitted to the Board by the applicant within fifteen days after the last date of publication or as otherwise directed by the Board. Such proof shall show the dates on which said notice was published in the newspaper.
(c) Failure to give adequate notice. If adequate proof of notice is not provided by the applicant, the application may be dismissed and the application fee forfeited.
(d) Revised published notice of application. The Board may require a revised notice to be published at the applicant's expense in case material error is made, or if the applicant makes substantial revisions to his application after notice of the original application.

[12] Okla. Admin. Code, Title 785:20-5-3 provides:
(a) If the Board does not schedule a hearing on the application before instructing the applicant to publish notice, a hearing shall be scheduled by the Board upon receipt of a protest which meets the requirements of Section 785:4-5-4. The Board shall notify the applicant and protestant of such hearing. Any interested party shall have the right to protest any application and appear and present evidence and testimony in support of such protest [82:105.11] at the hearing thereon. If, after the application is deemed complete, the application cannot be recommended to the Board for approval, the applicant shall be notified and shall be given an opportunity for hearing.
(b) Protests shall be made and hearings conducted in accordance with Chapter 4 of this Title.
(c) Even if no protest to the application is received, the applicant shall be advised and shall be given an opportunity for a hearing if the application cannot be recommended to the Board.
(d) For a limited quantity permit application, interested persons may submit written comments. A hearing on such application may be required by the Executive Director pursuant to 785:20-7-1(f) if it is shown that a significant public interest or property right would be affected by approval of the application.

[13] Title 75 O.S. 2011 §309, see note 5, supra.

[14] Title 75 O.S. 2011 §318, see note 7. supra.

[15] Title 82 O.S. 2011 §105.11, see note 11, supra.

[16] Title 75 O.S. 2011 §306 of the Administrative Procedures Act provides:
A. The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.
B. The agency shall be made a party to the action.
C. Rules promulgated pursuant to the provisions of the Administrative Procedures Act are presumed to be valid until declared otherwise by a district court of this state or the Supreme Court. When a rule is appealed pursuant to the Administrative Procedures Act it shall be the duty of the promulgating agency to show and bear the burden of proof to show:
1. that the agency possessed the authority to promulgate the rule;
2. that the rule is consistent with any statute authorizing or controlling its issuance and does not exceed statutory authority;
3. that the rule is not violative of any other applicable statute or the Constitution; and
4. that the laws and administrative rules relating to the adoption, review and promulgation of such rules were faithfully followed.
The provisions of this subsection shall not be construed to impair the power and duty of the Attorney General to review such rules and regulations and issue advisory opinions thereon.

D. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

[17] Title 82 O.S. 2011 §105.11, see note 1, supra.

[18] Cate v. Acron Oil Co., Inc., 1985 OK 15, 695 P.2d 1362, also recognized that the United States Supreme Court in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313015, 70 S.Ct. 652, 656-657, 94 L.Ed. 865, 872-874 (1949) determined that parties should be provided the full opportunity to appear and be heard. The Court said:
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is [695 P.2d 1356] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. * * * but when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

[19] Title 82 O.S. 2011 §105.11, see note 1, supra. Title 25 O.S. 2011 §106 provides:
No legal notice, advertisement, or publication of any kind required or provided for by the laws of this state to be published in a newspaper shall have force or effect unless published in a legal newspaper of the county. A legal newspaper of the county is any newspaper which, during a period of one hundred four (104) consecutive weeks immediately prior to the first publication of such notice, advertisement, or publication:
1. has maintained a paid general subscription circulation in the county; and
2. has been admitted to the United States mails as paid second-class mail matter; and
3. has been continuously and uninterruptedly published in the county. If there is no legal newspaper in a county, then all legal notices, advertisements, or publications of any kind required or provided for by the laws of this state shall be published in a legal newspaper in an adjoining county of this state, which newspaper has general circulation in the county or political subdivision in which such notice is required.
Nothing in this section shall invalidate the publication of such legal notices, advertisements, or publications in a newspaper which has moved its place of publication from one location in the county to another location in the same county without breaking the continuity of its regular issues for the requisite length of time, or the name of which may have been changed when said change of location was made as permitted by United States postal laws and regulations. Failure to issue or publish said newspaper for a period of fourteen (14) days due to fire, accident, or other unforeseen cause, or by reason of the pendency of mortgage foreclosure, attachment, execution, or other legal proceedings against the type, presses, or other personal property used by the newspaper, shall not be deemed a failure to maintain continuous and consecutive publication as required by the provisions of this section, nor shall said failure invalidate the publication of a notice otherwise valid. Failure to issue or publish a newspaper qualified to publish legal notices, advertisements, or publications of any kind, for a period totaling not more than fourteen (14) consecutive days during a calendar year shall not be deemed a failure to maintain continuous and consecutive publication as required by the provisions of this section, nor shall said failure invalidate the publication of a notice otherwise valid.

[20] Verified On-Line Data and Reports, https://www.verifiedaudit.om/pubco.php?pifd=6914, accessed January 7, 2020.

[21] United States Census Bureau, https://www.cencus.gov/quickfacts/mcclaincountyoklahoma, accessed January 6, 2020.

[22] United States Census Bureau, https://www.census.go/quickfacts/fact/table/garvincountyoklahoma., accessed January 7, 2020.

[23] Oklahoma Press Association, http://www.okpress.com/business-members, assessed January 7, 2020.

[24] Mondo Times, https://www.mondotimes.com/1/world/us/36/8562/23911, accessed January 8, 2020.

[25] Randy Ellis, "The Oklahoman to Trim Circulation Area for Home Deliveries", The Oklahoman, Dec. 27, 2018.

[26] For instance, in Crownover v. Keel, 2015 OK 35, 357 P.3d 470, we held that notice by publication was insufficient for a tax sale of real property, even when notice was sent by certified mail to the known landowner and returned as insufficient.

[27] Title 82 O.S. 2011 §105.11, see note 1, supra.

[28] The Concurring in Part/Dissenting in Part seeks to remand the matter for a trial, apparently to determine the nature of ownership interest in the land/water rights, even though the petitioners own the land containing the stream that feeds the lake, as well as land that abuts the lake. Nevertheless, the statute is constitutionally insufficient by allowing only publication notice. Landowners are easily discernable by both the Board and/or the permit applicants. Regardless, the result is exactly the same. Because of the insufficient notice, the matter is remanded for a trial in which both the petitioners and the permit applicants will have an opportunity to present their objections or acquiescence to the permits.




Rowe, J., with whom, Gurich, C.J., Kauger and Combs, JJ., join, concurring:
¶1 I concur in the Court's judgment that the notice by publication provisions of 82 O.S. § 105.11 are insufficient to afford due process when applied to landowners who are known or easily discoverable. I write separately to note that the question before us has long been settled in federal jurisprudence.
¶2 The Supreme Court of the United States has previously instructed, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[1] The right to be notified of proceedings affecting one's legally protected interests is a vital corollary to one of the most fundamental requisites of due process--the right to be heard.[2]
¶3 The Supreme Court has also addressed the constitutional sufficiency of notice by publication, calling it a "poor and sometimes hopeless substitute for actual service of notice."[3] The Supreme Court reiterated that view in Schroeder v. City of New York, when considering facts similar to the case at bar.[4] In Schroeder, the City of New York had initiated proceedings to acquire the right to divert water from a river that ran across the plaintiff's land.[5] Despite the fact that the plaintiff's name and address were easily ascertainable from deed records and tax rolls, the city published notice of the proceedings in several local newspapers in accordance with a state statute.[6] Although the notice was published in compliance with the statute, the court found it to be constitutionally insufficient, stating, "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear to resort to a means less likely than the mails to apprise them of its pendency."[7]
¶4 The value of water to landowners in Oklahoma is immeasurable, and as such, a landowner must be afforded strict due process in protecting his or her water rights. Notice by publication is no more than a mere gesture of ostensible due process, which falls far short of the federal standard, and the standard adopted today by this opinion.

FOOTNOTES

[1] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In what is likely the seminal opinion on matters of notice and due process, the Supreme Court clarified, "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of informing the absentee might reasonably adopt to accomplish it." Id. at 315.

[2] Id. at 314; Schroeder v. City of New York, 371 U.S. 208, 213 (1962).

[3] City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1962).

[4] Schroeder, 371 U.S. at 213.

[5] Id. at 209.

[6] Id. at 210.

[7] Id. at 212-13.




KANE, J., with whom Winchester, J. joins, concurring in part and dissenting in part:
¶1 While the judgment of the trial court is properly reversed in this action, the majority continues forward with the same error committed by the trial court--prematurely resolving a due process dispute by presuming facts, rather than establishing facts from the record. This case stands to create broad, unintended consequences for countless other classes of litigation not before us today. While I share the majority's sense of duty to protect the due process rights of our citizens, the record before us does not yet show that Petitioners' due process rights have been abridged. Therefore, I concur in part and dissent in part.
¶2 Petitioners assert that their procedural due process rights were violated by the publication of notice of the requested Oklahoma Water Resources Board (OWRB) permit. The federal and state constitutions provide that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. Amend. XIV, § 1; Okla. Const. Art. 2, § 7. "In determining whether an individual has been denied procedural due process we engage in a two-step inquiry, asking whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process." In re A.M., 2000 OK 82, ¶ 7, 13 P.3d 484. In other words, a citizen is entitled to more process and greater notice as to a vital interest than as to a trivial interest. What process is due "must be determined on a case-by-case basis because the due process clause does not by itself mandate any particular form of procedure." Id. ¶ 9. In determining the appropriate level of process, there are three factors to consider:


First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
State ex rel. Bd. of Regents of the Univ. of Okla. v. Lucas, 2013 OK 14, ¶ 29, 297 P.3d 378 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).
¶3 Initially, we must determine the nature of Petitioners' property interests in the water before we analyze the sufficiency of the notice. While water is a natural resource with profound value to landowners, the majority appears to presume that if an administrative proceeding has water as its subject, then the interest in said proceeding to any potentially affected citizen is per se profound. The flaw in that analysis is that the impact upon the citizen is assumed, rather than determined by competent evidence. If it were to be proven that the proposed permit would have no impact whatsoever upon the citizen's property interest, there is no right to notice at all, as the first leg of our two-step inquiry has failed.[1] It appears that the trial court erred in failing to entertain the notion Petitioners' substantial rights were abridged, and the majority erred in failing to entertain the notion Petitioners had failed to establish that substantial rights were hindered. In fact, Petitioners in another proposition of error expressly took issue with the fact that they had been denied the opportunity to make such a record.
¶4 The majority goes on to find, without a record, that the citizens potentially affected by the subject statute were "easily locatable." The record is silent as to the size of the task OWRB undertook in giving notice of the subject permit. Some bodies of water in Oklahoma have over 100 miles of shoreline.[2] As to the specific notice to these litigants, the majority conflates the neighbor's presumed knowledge of Petitioners with the knowledge of the government body OWRB. In any event, the issue may be moot. Petitioners filed a formal written protest prior to the hearing, appeared at the hearing, and raised their concerns before a decision was made.
¶5 Given that the protesting parties filed their written protest, appeared at the hearing, and were heard, the current record does not yet establish that Petitioners even have standing to question the constitutionality of the subject statute.
¶6 I would reverse and remand for a trial.

FOOTNOTES

[1] In fact, the OWRB argued that Petitioners do not even own the water. They contend that the water involved in the subject dispute is owned by the State of Oklahoma and that the riparian rights of Petitioners were properly considered and provided for by the OWRB.

[2] See, e.g., Boyd v. U.S. ex rel. Army Corps of Eng'rs, 1992 OK 51, ¶ 2, 830 P.2d 577, 577 ("Tenkiller Ferry Lake is under the jurisdiction and control of the United States through the Army Corps of Engineers (Corps or COE). The lake consists of some 12,500 acres of water with 130 miles of shoreline.").
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 51, 830 P.2d 577, 63 OBJ 1283, Boyd v. U.S. ex rel. U.S. Army Corps of Engineers
Discussed
 1993 OK 113, 868 P.2d 676, 4 OBJ 2845, DuLaney v. Oklahoma State Dept. of Health
Discussed at Length
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2015 OK 35, 357 P.3d 470, CROWNOVER v. KEEL
Discussed
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed
 1985 OK 15, 695 P.2d 1352, Cate v. Archon Oil Co., Inc.
Discussed at Length
 1986 OK 16, 732 P.2d 438, 57 OBJ 998, Harry R. Carlile Trust v. Cotton Petroleum Corp.
Discussed at Length
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 106, Legal Notice Publication By Newspaper
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250.3, Definitions
Cited
 75 O.S. 306, Validity or Applicability of Rules - Action - Parties - Presumption of Validity - Burden Of Proof When Rule Appealed - Declaratory Judgment
Cited
 75 O.S. 309, Individual Proceedings - Notice - Hearing
Discussed
 75 O.S. 318, Judicial Review
Discussed
Title 82. Waters and Water Rights
 Cite
Name
Level

 82 O.S. 105.1, Definitions
Discussed
 82 O.S. 105.11, Notice of Application
Discussed at Length
 82 O.S. 105.13, Seasonal, Temporary, Term and Provisional Temporary Permit
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA