759 P.2d 210 (1988)
Larry KLINE, et al., Appellants,
v.
The STATE of Oklahoma, ex rel. The OKLAHOMA WATER RESOURCES BOARD, Appellee, and
Western Farmers Electric Cooperative, Intervenor.
Nos. 65540, 65544.
Supreme Court of Oklahoma.
February 23, 1988.
As Corrected February 25, 1988.
Duke Halley, Woodward, for appellants.
Dean A. Couch, Jerry Barnett, Oklahoma Water Resources Bd., Oklahoma City, for appellee.
Larry Derryberry, O. Clifton Gooding, Derryberry Quigley Parrish Gooding & Nance, Oklahoma City, for intervenor.
*211 ALMA WILSON, Justice:
At issue is the trial court's affirmance of a final order entered by the Oklahoma Water Resources Board on August 9, 1983. The Board's order established the maximum annual yield of fresh ground water from the alluvium and terrace deposits of the Beaver-North Canadian River in five counties in northwestern Oklahoma. Based upon data and information compiled by the United States Geological Survey, the Board allocated one (1) acre-foot of fresh ground water to each acre of land overlying the basin comprised by the alluvium and terrace deposits of the Beaver-North Canadian River in Harper, Major, Woodward, Dewey and Blaine Counties, Oklahoma.
Pursuant to 82 O.S. 1981 § 1020.5 (1-5), the elements included in the survey and investigation conducted by the United States Geological Survey to determine maximum annual yield encompassed the following: (a) the total land area overlying the basin or subbasin at 426,000 acres; (b) the amount of water in storage in the basin or subbasin as of 1973 at 4.11 million acre-feet; (c) the rate of natural recharge to the basin or subbasin at 2.5 inches per year and total discharge from the basin or subbasin during the 20 year simulation period at 6.23 million acre-feet; (d) transmissibility of the basin at 5 to 8,030 feet squared per day and averaged 1,820 feet squared per day; and, (e) the possibility of pollution to the basin or subbasin from natural sources, which was found to be negligible.
At the administrative hearing below, interested landowners appeared to protest the Board's determination of maximum annual yield. Thereafter the landowners appealed the matter to the District Court of Woodward County. Western Farmers Electric Cooperative, an electric generation facility which obtains ground water within the area in question, sought to intervene in the landowners' appeal and also filed a separate appeal, though it had not appeared at the administrative hearing. As basis for intervention in the landowners' appeal, Western Farmers Electric Cooperative asserted that the construction given the Oklahoma Groundwater Law by the Oklahoma Water Resources Board is unconstitutional. Accordingly, upon its Petition to Intervene in the landowner's appeal, Western Farmers Electric Cooperative confined its request to encompass only those legal and constitutional issues common between its own appeal and that of the case into which it sought to intervene; namely, the constitutional propriety of the Oklahoma Groundwater Law. The District Court of Woodward County granted the Cooperative's request to intervene; however, extraneous issues raised by Western Farmers Electric Cooperative remained pending in its own appeal to the District Court.[1]
*212 On November 4, 1985, the District Court of Woodward County affirmed the Board's order, including the determination of maximum annual yield as supported by substantial evidence in the administrative record. The District Court, moreover, upheld as constitutional the contested provisions of the Oklahoma Groundwater Law, codified at 82 O.S. 1981, § 1020.1 et seq. Appellant-landowners and the Intervenor, Western Farmers Electric Cooperative, separately appealed this ruling. We have consolidated these separate appeals for disposition.

I
In Oklahoma Water Resources Board & Mobil Oil Corp. v. Texas County Irrigation & Water Resources Ass'n., 711 P.2d 38 (Okl. 1984), this Court considered 82 O.S. 1981, § 1020.1 et seq., the relevant and applicable ground water law enacted in 1972. Therein, we emphasized that under the 1972 revisions, our Legislature adopted a policy of utilization of state water resources, as opposed to the prior use conservation policy. We likewise acknowledged the Act's requirement of a minimum basin life of twenty (20) years. Accordingly, we noted the express mandate of the current ground water law:
"It is hereby declared to be the public policy of this state, ... to utilize the ground water resources of the state, and for that purpose to provide reasonable regulations for the allocation for reasonable use based on hydrologic surveys of fresh ground water basins to determine a restriction on the production, based on the acres overlying the ground water basin or subbasin...."
[82 O.S. 1981, § 1020.2] [Emphasis added.]
In conformity with the statutory directive, above, we concluded in Mobil that as regards the utilization of the ground water resources of this state, the issuance of a permit must meet all statutory requirements, including, "allocation for reasonable use" and "restriction of the production" based upon information provided by hydrologic survey. Inquiry into these matters we deemed legally necessary and reasonable in order that the water resources of our State may be utilized responsibly. Upon consideration of the revised Groundwater Act, in Mobil, we cast no constitutional doubt thereon. We today expressly uphold its constitutionality. We accordingly find no merit in either the Appellant-landowners' or the Intervenor's constitutional challenges to the Oklahoma Groundwater Law which has now been in place some fifteen (15) years hence.
The 1972 Oklahoma Groundwater Law (effective July 1, 1973), is the current legislatively prescribed law which governs the use of groundwater in Oklahoma. It prescribes the parameters and scope of Oklahoma's current authorized and reasonable use rule. "Reasonable use", in the context of the current law, is not indicative of the common law usage, nor that of previous case authority. Ref., e.g., Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694 (1936). In providing for "reasonable regulations for the allocation for reasonable use based on hydrologic surveys of fresh groundwater basins or subbasins to determine a restriction on the production", the extent of the underscored language is used in its ordinary sense in order that the water resources of our State may be utilized beneficially and without waste. We held in Anderson-Prichard Oil Corporation v. Corporation Commission, 205 Okl. 672, 241 P.2d 363, appeal dismissed, 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 696 (1952), that the Legislature may regulate and restrict the use and enjoyment of landowners of the natural resources of the state such as subterranean waters, so as to protect them from waste and to prevent the infringement of the rights of others. Such legislation does not infringe the constitutional inhibitions against the taking of property without due process of law, denial of equal protection of the laws, or taking property without just compensation. It is, consequently, manifest that contrary to the Intervenor's *213 assertion, the present Groundwater Law does not unconstitutionally deprive the parties of vested property rights or abrogate prior water rights without due process of law.

II
In deciding the area to be included in the present hydrological study to be conducted by the United States Interior Department, the Oklahoma Water Resources Board selected the Beaver-Harper County line as the western boundary, taking into consideration that parts of the underlying acquifer west of this line are hydrologically connected with the Ogallala Acquifer, which has been the subject of prior investigation by the United States Geological Survey. The Oklahoma Water Resources Board additionally selected the dam at Canton Lake as the eastern boundary because the dam acts as a hydrologic barrier such that conditions in the acquifer are different down-gradient from Canton Lake dam. These determinations were based upon preliminary assessments which also revealed that the alluvium and terrace deposits of the Beaver-North Canadian River extended along the river from the Oklahoma Panhandle to Lake Eufaula. Thus, this entire area conceivably could be viewed as a unitary acquifer,[2] but it contains geological and hydrological conditions too varied to constitute a single groundwater basin, as defined by the relevant Oklahoma ground water law, at 82 O.S. 1981, § 1020.1(C):
§ 1020.1. Definitions
.....
C. The term "groundwater basin" shall mean a distinct underground body of water overlain by contiguous land and having substantially the same geological and hydrological characteristics and yield capabilities. [Emphasis supplied.]
Pursuant to the legislatively prescribed definition, supra, of "groundwater basin", and premised upon available knowledge and technical expertise, the Oklahoma Water Resources Board reasoned that the portion of the acquifer contained within Harper, Woodward, Dewey and Blaine Counties to Canton Lake dam likely contained similar characteristics throughout. Therefore, the Board commissioned the United States Geological Survey to conduct hydrological investigation within this area. Upon scientific examination by the United States Geological Survey, it was concluded that there exists a substantial oneness in the area of investigation, which qualifies under 82 O.S. 1981, § 1020.1(C) as a groundwater basin. According to the USGS report, entitled "Geohydrology and Numerical Simulation of the Alluvium and Terrace Acquifer along the Beaver-North Canadian River from the Panhandle to Canton Lake, Northwestern Oklahoma", there are some [insubstantial] differences in the area and the area is a part of a greater system [acquifer], but the area is substantially the same. However, the Appellant-landowners' and the Intervenor's protest that the differences in the area are not insubstantial; but rather, create either a "subbasin" or "sub-subbasin" beneath their respective properties. These "subbasins" or "sub-subbasins" form distinct bodies of water from which separate determinations of maximum annual yield should be assessed, they say. The Appellant-landowners and Intervenors contend that their separate maximum annual yields should be one-half (1/2) acre-foot of water per year, and two (2) acre-feet per year, respectively, as opposed to the one (1) acre-foot allocated by the Board. We note, however, that neither the Appellants, nor the Intervenors, have instituted administrative proceedings to investigate the existence of any groundwater subbasins. Under the Oklahoma Groundwater Law, 82 O.S. 1981, § 1020.6, subsequent subbasin hearings may be had after additional hydrologic surveys have been taken. We therefore conclude that the identification of all possible subbasins within a basin is impractical and is therefore *214 not possible, nor a strict prerequisite to the validity of an initial investigation of a groundwater basin. Here, the Oklahoma Water Resources Board commenced an hydrologic investigation pursuant to the revisions of the 1972 Oklahoma ground water law at 82 O.S. 1981, § 1020.4, (effective July 1, 1973), to update hydrologic surveys every ten (10) years. The data from the survey and investigation supported a finding that a groundwater basin existed in the area of examination which had been designated by the Board based upon available knowledge and expertise. Thereafter, maximum annual yield was determined upon consideration of the total land area overlying the basin, the amount of water in storage in the basin, the rate of natural recharge to and discharge from the basin, transmissibility of the basin, and the possibility of pollution, (which was found to be negligible), as required by statute. 82 O.S. 1981 § 1020.5. We find the establishment of the groundwater basin in this case was not an arbitrary determination by the Board, and that the Oklahoma Water Resources Board sufficiently fulfilled its legislative mandate. The standard of review in Oklahoma under the Administrative Procedures Act is that of substantial evidence and further that the findings should not be reversed unless they are clearly erroneous. 75 O.S. 1981, § 322. The Board clearly met its burden of proof by substantial evidence. The purpose on review is not to determine whether, on like testimony, the District Court or this Court would make a similar ruling, but whether there is substantial evidence to sustain the Order. The record on review here does contain substantial evidence to support the Order. The District Court, therefore, did not err in determining the issues herein, and the District Court's judgment upholding the Order of the Oklahoma Water Resources Board is AFFIRMED.
DOOLIN, C.J., and HODGES, LAVENDER, WILSON and SUMMERS, JJ., concur.
HARGRAVE, V.C.J., and KAUGER, J., concur in result.
OPALA, J., concurs in part, dissents in part.
SIMMS, J., disqualified.
NOTES
[1] Though the Intervenor conceded that it had received actual notice of the administrative proceedings on maximum annual yield, it, nevertheless, now seeks judicial construction of the provisions of the Oklahoma Administrative Procedures Act, 75 O.S. 1987 Supp. § 302 et seq. to void the action taken by the Board. This issue, however, is extraneous to the present appeal, though it may be properly raised at such time as appeal may be made from the Intervenor's own case left pending in the District Court.
[2] An acquifer is a geological formation or layer of material that is porous or permeable to water, thus capable of containing or carrying water. 7 R. Clark, Water and Water Rights, 273 (1976).