LEO v. OKLAHOMA WATER RESOURCES BOARD
2023 OK 96
Case Number: 118892
Decided: 10/03/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 96, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

DEBBIE LEO DBA MILLER LAKE RETREAT LLC, LARINDA McCLELLAN, LOUISE REDMAN TRUST, WALTER MYRL REDMAN and KENNETH ROBERTS, Petitioners/Appellants/Cross-Appellees,
and
DALE JACKSON and JUSTIN JACKSON, Petitioners,
v.
OKLAHOMA WATER RESOURCES BOARD, Respondent/Appellee,
and
THE CITY OF OKLAHOMA CITY, OKLAHOMA, Respondent/Appellee/Cross- Appellant.

ON APPEAL FROM THE DISTRICT COURT OF PUSHMATAHA COUNTY,
STATE OF OKLAHOMA
HONORABLE MICHAEL D. DeBERRY, DISTRICT JUDGE

¶0 Debbie Leo d/b/a Miller Lake Retreat, LLC, Larinda McClellan, Louise Redman Trust, Walter Myrl Redman, and Kenneth Roberts (collectively, "Petitioners") appeal the district court's order affirming the Oklahoma Water Resources Board's (the OWRB) final order granting a permit to The City of Oklahoma City (the City) to divert stream water from the Kiamichi River in Pushmataha County, Oklahoma. The City filed a cross-appeal of the district court's order denying its motion to dismiss Petitioners' petition for judicial review for lack of subject matter jurisdiction. City contends that Petitioners' failure to name the City as a respondent in their petition for judicial review of the OWRB's order was a fatal, jurisdictional flaw under the Oklahoma Administrative Procedures Act, (OAPA). We hold that 75 O.S.2011, § 318 However, Section 318(B)(2) of the OAPA does not require that the City be named as a respondent in the petition. Therefore, the district court's order finding it had jurisdiction to review the final agency order is affirmed. We further hold the district court properly applied the Four Points of Law in O.A.C. § 785:20-5-4, including using the OWRB's calculation of available stream water and evaluation of beneficial use, which was based on substantial evidence in the record, with no findings of prejudicial error. Therefore, the district court's order affirming the OWRB's order is affirmed.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

Kevin R. Kemper, Oklahoma City, Oklahoma, for Appellants/Cross-Appellees.

Sara D. Gibson, Oklahoma City, Oklahoma, for Appellee Oklahoma Water Resources Board.

Brian M. Nazarenus, Stacy L. Brownhill, Nazarenus Stack & Wombacher LLC, Greenwood Village, Colorado, for Appellee/Cross-Appellant the City of Oklahoma City.

KANE, C.J.:

¶1 The threshold issue on appeal is whether Petitioners/Appellants/Cross-Appellees Debbie Leo d/b/a Miller Lake Retreat, LLC, Larinda McClellan, Louise Redman Trust, Walter Myrl Redman, and Kenneth Roberts's (collectively, "Petitioners") failure to name Respondent/Appellee/Cross-Appellant The City of Oklahoma City as a respondent in their Petition for Judicial Review of the Respondent/Appellee Oklahoma Water Resources Board's (OWRB) order was fatal to their appeal under the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2011, § 31875 O.S.2011, § 318 However, Section 318(B)(2) of the OAPA does not require that the City be named as a respondent in the petition. Therefore, the district court acquired jurisdiction to review the OWRB's final order. As to the merits of this appeal, we hold: (1) this Court's decision in Purcell v. Parker, 2020 OK 83475 P.3d 83475 O.S.2011, § 321

FACTS AND PROCEDURAL HISTORY

¶2 The City applied for a permit to divert stream water from the Kiamichi River in Pushmataha County, Oklahoma. Eighty-five individuals and entities, including Petitioners, protested the City's stream water permit application. After a hearing, the OWRB issued an Order granting the City's stream water permit on October 10, 2017. Petitioners

¶3 The City entered a special entry of appearance on November 16, 2017 and moved to dismiss the Petition for Judicial Review for lack of subject matter jurisdiction. The City argued that Petitioners had failed to join the City and other necessary parties, as required by the OAPA, 75 O.S.2011, § 318

¶4 Petitioners then filed an Amended Petition for Judicial Review on November 27, 2017, adding the City as an additional respondent in the caption of the case.

¶5 On December 4, 2017, the OWRB also filed a motion to dismiss the Petition for Judicial Review and the subsequent Amended Petition for Judicial Review for failing to meet the requirements of the OAPA, 75 O.S.2011, § 318See 75 O.S., § 318

¶6 The district court denied the City's and the OWRB's motions to dismiss on May 7, 2018, concluding that even though Petitioners' failure to name the City as a respondent in the style or caption of the petition for review was a fatal, jurisdictional flaw, pursuant to Davis v. Oklahoma Employment Security Commission, 2010 OK 45238 P.3d 922

¶7 On June 1, 2020, the District Court affirmed the OWRB's October 10, 2017 order granting the City the stream water permit. Petitioners appealed the June 1, 2020, order. The City filed a cross-appeal of the May 7, 2018, order denying its motion to dismiss for lack of subject matter jurisdiction. The Court retained this appeal on the OWRB's motion.

I. JURISDICTION OF THE DISTRICT COURT

¶8 We will first address the jurisdictional issue raised in the City's cross-appeal. The City argues Petitioners' failure to name the City as a respondent in their Petition for Judicial Review was fatal to their appeal under the OAPA, 75 O.S.2011, § 318

STANDARD OF REVIEW

¶9 Whether the district court has acquired jurisdiction in a proceeding for judicial review of an administrative order is a question of law. See Edmondson v. Siegfried Ins. Agency, Inc., 1978 OK 45577 P.2d 7275 O.S.2011, § 318 See State ex rel. Okla. State Dep't of Health v. Robertson, 2006 OK 99152 P.3d 875 The district court's legal rulings are subject to this Court's plenary, independent, and non-deferential reexamination under the de novo standard of review. Id.

ANALYSIS

Properly naming the respondent, pursuant to the OAPA, 75 O.S.2011,
§ 318(B)(2), is jurisdictional.

¶10 Judicial review of the OWRB's June 1, 2020, final order is available under 75 O.S.2011, § 318

[P]roceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

75 O.S.2011, § 318See Conoco, Inc. v. State Dep't of Health, 1982 OK 94651 P.2d 12575 O.S.1981, § 318see also State ex rel. Okla. Employ. Sec. Comm'n v. Emergency Physicians, Inc., 1981 OK 82631 P.2d 743See Conoco, 1982 OK 94

¶11 This Court is now asked to determine whether properly naming the respondent(s) in the petition for judicial review, pursuant to 75 O.S.2011, § 31875 O.S.2011, § 318

The OAPA, 75 O.S.2011, § 318(B)(2), requires that the agency be named as 
a respondent in the caption of the petition for judicial review.

¶12 The question then becomes: what parties must be named as respondents to comply with 75 O.S.2011, § 318

¶13 Section 318(B)(2) clearly and unambiguously requires that the agency be named as a respondent in the petition for review. The language "filing a petition . . . naming as respondents only the agency," denotes the agency issuing the final order being appealed must be named as a respondent in the petition for judicial review. We hold that 75 O.S.2011, § 318 Petitioners named the OWRB as a respondent in the caption of the timely filed Petition for Judicial Review, satisfying this requirement.

The OAPA, 75 O.S.2011, § 318(B)(2) does not require that any other party of 
record in the administrative proceeding be named as a respondent in the 
petition for judicial review.

¶14 Next, we turn to the interpretation of the words "naming as respondents . . . such other party or parties in the administrative proceeding as may be named by the petitioner." 75 O.S., § 318

¶15 The City urges this Court to consider opinions of the Court of Civil Appeals, which analyzed the statutory language prior to the 2011 amendments to 75 O.S., § 31875 O.S.2001, § 318implicitly required that all parties of record in the administrative proceeding also be joined as parties in the district court action for judicial review. See Okla. Found. for Med. Quality v. Dep't of Central Servs., 2008 OK CIV APP 30 180 P.3d 175 O.S.2001, § 318H & En, Inc. v. Okla. Dep't of Labor, 2006 OK CIV APP 70136 P.3d 1070

¶16 Opinions published by the Court of Civil Appeals have no precedential value and are merely persuasive. See Skinner v. John Deere Ins. Co., 2000 OK 18998 P.2d 121975 O.S.2011, § 318

¶17 The fundamental purpose of statutory construction is to ascertain and give effect to the intent of the Legislature. Rickard v. Coulimore, 2022 OK 9505 P.3d 920Id. If the statutory language is clear and unambiguous, this Court must apply the plain and ordinary meaning of the words. Id.; 25 O.S.2011, § 1Id.

¶18 In 2011, the Oklahoma Legislature amended the OAPA by adding the pertinent statutory language: "[P]roceedings for review shall be instituted by filing a petition . . . naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law . . . ." 75 O.S.2011, § 318inter alia, the emphasized language:

C. Copies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition. Any party not named as a respondent in the petition is entitled to respond within ten (10) days of receipt of service. The court, in its discretion, may permit other interested persons to intervene.

75 O.S.2011, § 318Keating v. Edmondson, 2001 OK 11037 P.3d 882Id.

¶19 City argues the legal conclusions made in the COCA cases were unaffected by the 2011 amendments. Petitioners argue that the 2011 amendments to the OAPA were intended to make the naming requirements more lenient.

¶20 We presume the Legislature was aware of, and responding to, the interpretation of § 318(C) in the Court of Civil Appeals decisions. "When ascertaining legislative intent the Court must presume that when adopting the amendment, the legislature had knowledge of the law as it previously existed and had in mind the judicial construction which had been placed on that law." Prettyman v. Halliburton Co., 1992 OK 63841 P.2d 57375 O.S., § 31875 O.S.2011, § 318See Okla. Found. for Med. Quality v. Dep't of Central Servs., 2008 OK CIV APP 30 180 P.3d 1H & En, Inc. v. Okla. Dep't of Labor, 2006 OK CIV APP 70136 P.3d 1070

¶21 The language "such other party or parties in the administrative proceeding as may be named by the petitioner" is clearly and unambiguously permissive. In this case, the City (the permit applicant) and 85 protestants were parties in the administrative proceeding. "[A]s may be named by the petitioner" allows Petitioners to pick and choose which, if any, of the parties in the administrative proceeding are named as respondents in the petition for judicial review. Optionality is supported by the language "[a]ny party not named as a respondent in the petition is entitled to respond within ten (10) days of receipt of service" in 75 O.S.2011, § 318

¶22 We hold that 75 O.S.2011, § 318

Due process requires that all parties of record in the administrative
proceeding be given notice and an opportunity to be heard in the judicial
review proceeding.

¶23 Next, the City argues that the statutory language "naming as respondents . . . such other party or parties in the administrative proceeding . . . as otherwise may be allowed by law" requires that the City be named as a respondent. 75 O.S.2011, § 318

¶24 It is undeniable that the City's interest, i.e., stream water permit, will be directly affected by the outcome of the judicial review proceeding. The City's application was the catalyzing event for the underlying administrative proceeding, and the City had the burden of proof in the administrative proceeding. However, one must bear in mind that this is not an original action in the district court. The district court is exercising its appellate jurisdiction under the OAPA. See 75 O.S., § 31812 O.S.2011, § 951

¶25 Section 318(C) requires that the petitioner deliver or mail copies of the petition for review to "all other parties of record"See 75 O.S.2011, § 31875 O.S., § 31875 O.S., § 318

¶26 The district court found that Petitioners' failure to name the City was a fatal, jurisdictional flaw, but that they should be permitted to amend their petition to name the City as a respondent and, therefore, the district court acquired jurisdiction to review the OWRB's order. The district court's May 7, 2018, order denying the City's motion to dismiss for lack of jurisdiction reached the correct result but for the wrong reason. This Court is not bound by the district court's reasoning and may affirm on a different legal rationale. See Hall v. GEO Grp., Inc., 2014 OK 22324 P.3d 39975 O.S.2011, § 31875 O.S.2011, § 318

II. REVIEW OF THE OWRB'S ORDER GRANTING THE STREAM WATER
PERMIT

¶27 Next, we must review the district court's order on administrative appeal affirming the OWRB's order granting the stream water permit in conjunction with Petitioners' remaining propositions of error, including: (1) whether Purcell v. Parker, 2020 OK 83475 P.3d 834

STANDARD OF REVIEW

¶28 OWRB decisions issuing or denying a stream water permit pursuant to 82 O.S.2011, §§ 105.1See Farmacy, L.L.C. v. Kirkpatrick, 2017 OK 37City of Tulsa v. State ex rel. Pub. Employees Relations Bd., 1998 OK 92967 P.2d 1214

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act [75 O.S., § 310

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

75 O.S.2011, § 322Scott v. Okla. Secondary Sch. Activities Ass'n, 2013 OK 84313 P.3d 891Kline v. State ex rel. Okla. Water Res. Bd., 1988 OK 18759 P.2d 210See 75 O.S.2011, § 322

ANALYSIS

This Court's decision in Purcell v. Parker is distinguishable from this case.

¶29 Purcell v. Parker, 2020 OK 83475 P.3d 834

¶30 Petitioners assert that the Kiamichi River Basin generally encompasses LeFlore, Latimer, Pushmataha, Pittsburg, Atoka, and Choctaw counties. It does not include McCurtain County. The City's notice by publication purportedly followed the requirements of 82 O.S., § 105.11Purcell that notice by publication is defective "if the affected landowners are known, or reasonably discoverable, notice provided by publication results in an unconstitutional exercise of jurisdiction and a denial of due process" and, therefore, the permit is invalid. See Purcell, 2020 OK 83

¶31 The City responds that Petitioners do not have standing to challenge notice. Because they were represented at the OWRB hearing and in this action, Petitioners clearly had actual notice. While many of the Petitioners are riparian landowners, they have not demonstrated any cognizable economic harm from notice by publication. Petitioners implicitly rely on third party standing, but that also fails. See Forest Oil Corp. v. Corp. Comm'n of Okla., 1990 OK 58807 P.2d 774

¶32 The City also argues the District Court properly determined the City satisfied the 2017 notice requirements. According to the 2017 state statutes and regulations, notice only needed to be published in the county of the point of diversion (Pushmataha County) and within the adjacent downstream county (Choctaw County). The City published in other counties in excess of the statutory requirement. Oklahoma law, not the Settlement Agreement,

¶33 The City argues Purcell is distinguishable. The Purcell decision does not indicate whether it applies to cases pending in the appellate pipeline. The City urges this Court not to apply Purcell here, arguing that retroactivity is not required because Petitioners received notice and participated extensively in the "truth determining process." The City argues it relied on the long-standing contrary statutory policy and applying Purcell would have a destabilizing effect. Because Petitioners lack standing to raise the notice issue, this is not a case of similarly- situated litigants who properly preserved the issue on appeal and would be left unprotected by the appellate process.

¶34 The standing and procedural posture in this case and Purcell are distinguishable. In Purcell, neighbors did not receive notice and did not timely protest or participate in the OWRB hearing. Purcell, 2020 OK 83Purcell neighbors discovered the OWRB meeting and were given five minutes to comment. Id. ¶¶ 7-8, at 838. The Purcell neighbors filed a declaratory judgment action. Id. It was not an appeal from an administrative agency's final order. Id. ¶ 14, at 841. Here, Petitioners timely protested and fully participated in the OWRB proceedings and judicial review. Petitioners participated in the permitting process for four years. The integrity of the truth determining process was protected.

¶35 The OWRB responds that it is difficult to understand how Petitioners' constitutional rights to notice and opportunity to be heard were violated when they were aware of the application and participated in the administrative proceedings and during judicial review. We agree. Notice to all property owners within the Settlement Agreement area is not required by law or due process. The Settlement Agreement applies to all counties in the Kiamichi River Basin, but state law and the OWRB's notice procedures do not -- they only require notice in the county of the proposed diversion and the downstream county because it is those appropriative and domestic riparian users who may be impacted by a new diversion even though the existing rights of those water users remain unchanged. Petitioners lack standing. We hold the facts in Purcell are distinguishable from this case.

Granting the City's stream water permit does not constitute an 
unconstitutional taking of Petitioners' water rights; instead, it is a proper 
exercise of the State's police powers.

¶36 Appropriative and riparian rights are coexistent, prevailing water law in Oklahoma. See 82 O.S.2011, § 105.1A82 O.S.2011, § 105.2See O.A.C. § 785:20-1-2. A "riparian right" means the right of an owner of land adjoining a stream or watercourse to use water from that stream for reasonable purposes. Riparian rights are limited to domestic use and pre-1963 vested rights. See 82 O.S.2011, § 105.1A82 O.S.2011, § 105.2

¶37 Before taking final action on a stream water permit application, the OWRB determines from the evidence four points of law ("Four Points of Law") pursuant to O.A.C. § 785:20-5-4(a):

(1) Unappropriated water is available in the amount applied for [82:105.12(A)(1)] (as set forth in 785:20-5-5(a) and (b));

(2) The applicant has a present or future need for the water and the use to which applicant intends to put the water is a beneficial use. In making this determination, the Board shall consider the availability of all stream water sources and such other relevant matters as the Board deems appropriate, and may consider the availability of groundwater as an alternative source [82:105.12(A)(2)] as set forth in 785:20-5-5(c);

(3) The proposed use does not interfere with domestic or existing appropriative uses [82:105.12(A)(3)] as set forth in 785:20-5-5(d); and

(4) If the application is for the transportation of water for use outside the stream system wherein the water originates, [82:105.12(A)(4)] the provisions of Section 785:20-5-6 are met.

O.A.C. § 785:20-5-4(a) (emphasis in original). If the OWRB determines these Four Points of Law and the applicable provisions of Chapter 20 of the regulations have been established, then the OWRB "shall approve the application by issuing a permit to appropriate water." O.A.C. § 785:20-5-4(b) (emphasis in original); 82 O.S.2011, § 105.12

¶38 When the OWRB granted the City's Permit, it was a proper exercise of the state's police power. The granting of the City's Permit does not abolish the domestic riparian and appropriative uses of others. In fact, the evidence presented at the hearing before the OWRB shows there is unappropriated water in the Kiamichi River and Sardis Lake on an average annual basis in excess of the City's Application, even after existing appropriative uses and domestic riparian uses are considered.

¶39 The Oklahoma Legislature provided the OWRB with the authority to complete studies of water systems and to issue permits for appropriation of water under the state's police powers. See 82 O.S., § 105.1et seq. The state may control the flow of all nonnavigable streams and it may reserve to itself or grant to private parties the right to utilize such streams for power and other purposes. The statutes provide the Board's guidelines for regulation, including requirements for notice, approval by the Board, and reversion of water to the public due to non-use. In its effort to protect the public interest in water, the Legislature has provided for the OWRB's involvement in all aspects of stream water use, including appropriation of stream water.

¶40 The Oklahoma Legislature has also provided the district courts with the authority to adjudicate water rights. Id. If the Board determines that an adjudication of water rights is in the best interest of those using a particular stream, the Board may institute a suit in the district courts on behalf of the state. See 82 O.S.2011, § 105.6See 82 O.S.2011, § 105.5See 82 O.S., § 105.5

¶41 We hold the statutes are clear -- the OWRB has the authority to issue the permit for appropriation of stream water and such a determination is within the scope of the state's police powers and not a taking of a protected property interest. The June 1, 2020, order granting the City's Permit, accounted for riparian and existing appropriative uses before granting the stream water permit, and the district court properly found that the City and the OWRB were in substantial compliance with all Federal and State laws and regulations.

The district court properly denied Petitioners' request to conduct limited 
discovery and testimony on administrative appeal 
pursuant to 75 O.S.2011, § 321.

¶42 Petitioners argue they were denied the opportunity to conduct official discovery and bring evidence of "alleged irregularities in procedure before the agency, not shown in the record," that had been discovered after the final October 10, 2017, OWRB hearing. See 75 O.S.2011, § 321

¶43 Judicial review of agency decisions "shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs." 75 O.S.2011, § 321See, e.g., Seely v. Okla. Horse Racing Comm'n, 1987 OK CIV APP 61743 P.2d 685Baggett v. Webb, 1976 OK 176557 P.2d 433See 75 O.S.2011, § 321may be taken in the court") (emphasis added). We hold there was no actual evidence of irregularities presented to the court.

¶44 Petitioners generally allege that the OWRB was under pressure to grant the City's Permit from earlier litigation as resolved by the Settlement Agreement. However, Petitioners did not present any specific evidence of irregularities in the procedure. For example, the Petitioners did not submit any affidavits from the alleged "sources" who had informed Petitioners about the alleged state official who privately intervened with scholars at OSU and allegedly delayed publication of research about stream flow data and related environmental concerns about the Kiamichi River. Instead, Petitioners mistakenly believed that mere allegations of irregularities entitle them to conduct discovery in hopes of finding irregularities. We hold the district court properly denied Petitioners' requests for discovery and testimony on administrative appeal because Petitioners' general allegations of procedural irregularities failed to meet the exception for allowing additional testimony outside of the administrative record pursuant to 75 O.S., § 321

¶45 The District Court, in its Order of June 1, 2020, concluded:

In reviewing the record, the Court determines that there appears to be no evidence of political whim or pressure on the OWRB's ruling and the Court finds there is a presumption of correctness in their ruling that cannot be overruled by the Court.

Order, June 1, 2020, at ¶ 34.

¶46 In this case, Petitioners allege that "after the OWRB decision in October of 2017, counsel for the Petitioners was told by sources that at least one state official privately had intervened with scholars at Oklahoma State University to delay publication of research about stream flow data and related environmental concerns about the Kiamichi River." Appellants' Brief-in-Chief, at 14. Petitioners later contend that the "U.S. Department of Interior had refused to allow an expert employed by the U.S. Geological Survey at Oklahoma State University to testify."Id. at 15.

¶47 We agree with the City's argument that the DOI's denial was unrelated to any action by the OWRB or the City, and the District Court had no jurisdiction to reverse or otherwise challenge the Touhy decision by the United States. See C.F.R. § 2.281(a); United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). We likewise agree that a Touhy decision made pursuant to federal law cannot constitute a "procedural irregularity" contemplated by 75 O.S.2011, § 321

¶48 As an additional alleged error of law, the Petitioners argue for the first time in their Brief-in-Chief on appeal that the OWRB was under pressure to grant the City's Application from earlier litigation as resolved by the Settlement Agreement. 75 O.S.2011, § 316

Any party may request the disqualification of a hearing examiner or agency member, on the ground of his inability to give a fair and impartial hearing, by filing an affidavit, promptly upon discovery of the alleged disqualification, stating with particularity the grounds upon which it is claimed that a fair and impartial hearing cannot be accorded.

Notably, this Court has repeatedly rejected appellate claims of partiality where the complaining party never sought disqualification at the administrative proceeding under 75 O.S.2011, § 316See, e.g., Lowrey v. Hodges, 1976 OK 132555 P.2d 1016Robbins v. Okla. Alcoholic Bev. Control Bd., 1969 OK 202461 P.2d 610

¶49 Here, Petitioners never sought disqualification during the administration proceeding. Likewise, Petitioners did not promptly file an affidavit pursuant to 75 O.S., § 316See Robbins, 1969 OK 202

¶50 Moreover, even if Petitioners had properly raised the issue of undue influence, there is no evidence in the record to support Petitioners' claims that the Board was under undue pressure. In fact, the opposite is true. The Board members heard argument from each party at the Board meeting prior to the vote. The Board members also all had access to review the recording of four days of testimony and one day of public comment prior to the vote. In sum, there is no evidence to support, or otherwise contemplate, that the Board was unduly influenced in making its decision.

¶51 Lastly, Petitioners assert the hearing examiner erred during the administrative proceeding by excluding evidence of environmental concerns, including a letter from the U.S. Fish and Wildlife Service ("FWS") dated April 10, 2017, that raised concerns about the effects of the City's proposed Permit on species of conservation concern. The City argues that Oklahoma stream water law does not contemplate consideration of environmental purposes, such as instream flow, for streams like the Kiamichi River that have not been designated as a "scenic river area" or "Outstanding Resource Waters." Importantly, the record on appeal clarifies that the hearing examiner did not grant or deny the City's pre-hearing motion in liminie to exclude the FWS April 10, 2017, letter, but rather held that "the letter itself will have to be undergirded with additional information if anyone wants to use it specifically as evidence." (citation omitted).

¶52 We agree with the City that to the extent the hearing examiner excluded evidence regarding environmental concerns, the hearing examiner did so pursuant to his/her authority of a judicial nature to marshal the relevancy of evidence and testimony. See 75 O.S., § 250.382 O.S., § 1085.10Tulsa Classroom Teachers Ass'n v. State Bd. of Equalization, 1979 OK 136601 P.2d 99

¶53 The City complied with all discovery and evidentiary requirements during the administrative hearing -- including responding to multiple rounds of Petitioners' written discovery requests and producing over one hundred documents. In the district court on the petition for review, the City opposed additional discovery requests and admission of evidence in line with the general rule that judicial review of agency orders is "confined to the record" pursuant to 75 O.S.2011, § 321

The district court's order affirming the OWRB's order granting the City's 
stream water permit was free from prejudicial error. 

¶54 Before taking final action on a stream water permit application, the OWRB must determine from the evidence presented, pursuant to O.A.C. § 785:20-5-4(a) whether:

(1) Unappropriated water is available in the amount applied for;

(2) The applicant has a present or future need for the water and the use to which applicant intends to put the water is a beneficial use; 

(3) The proposed use does not interfere with domestic or existing appropriative uses;

(4) If the application is for the transportation of water for use outside the stream system wherein the water originates, the provisions of Section 785:20-5-6 are met.

O.A.C. § 785:20-5-4(a) (emphasis in original). If the Board determines from the record that the elements are satisfied, the Board shall approve the permit. See 82 O.S., § 105.12

1. The district court and the OWRB correctly determined there is 
sufficient unappropriated water available in the amount applied for to 
satisfy the first point of law. 

¶55 Petitioners argue the OWRB's order was in error because the City did not demonstrate that the Kiamichi River Model satisfied the first point of law, including the use of the Belzoni gauge to determine the flows in the Kiamichi River. Petitioners argue the OWRB and the district court failed to follow Oklahoma law for calculating available stream water under the first point of law. See O.A.C. § 785:20-5-5(a)(1). More specifically, Petitioners take issue with the Kiamichi River Model because they allege it improperly applies historical or outdated data from the Belzoni gauge.

¶56 The City on the other hand, argues the Kiamichi River Model meets its burden under the first point of law. It argues the Kiamichi River Model uses the variables and logic statements specifically tailored to the elements required by O.A.C. § 785:20-5-5(a)(1), which includes the model's raw data showing: precipitation, evaporation, flow records, stream gauge measurements, runoff, lake elevations, and storage capacity for the Southeast System's five reservoirs. The City contends the Kiamichi River Model appropriately applies the statutory formula for measuring available stream water, and that unappropriated water is available in the amount for which the City applied. To support this conclusion, the City's expert testified at length how the Kiamichi River Model demonstrated that 115,000 acre-feet per year ("AFY")

¶57 The City's engineering expert also testified that he carefully selected the Belzoni gauge for the important variable flow data because it provided forty-five years of varying historical data between 1926 and 1971, which predated the 1982 construction of Sardis Lake and because it showed how the Kiamichi River basin existed under natural stream conditions.

¶58 The OWRB reviewed the Kiamichi River Model and found it "satisfied OWRB stream water rules and statutes for permitting in the basin." Based on the record and the substantial evidence presented, we agree. Ultimately, the OWRB concluded: "[T]he Board finds that unappropriated water is available at the diversion point and in the amounts applied for by the applicant." In all cases, a reviewing court should avoid re-weighing the evidence or substituting its judgment for that of the agency's on factual matters. See 75 O.S.2011, § 322

2. The district court and the OWRB properly concluded the City intends 
to put the water to "beneficial use" as evaluated under the Four Points
of Law.

¶59 Petitioners allege the OWRB should have considered an additional element of "environmental issues, impacts upon economic activity, and more" as part of "beneficial use" under the Four Points of Law. Under Oklahoma stream water law, "beneficial use" is a factor that must be determined before a permit can be issued. See 82 O.S., § 105.12

[T]he use of such quantity of stream or groundwater when reasonable intelligence and reasonable diligence are exercised in its application for a lawful purpose and as is economically necessary for that purpose. Beneficial use include but are not limited to municipal, industrial, agricultural, irrigation, recreation, fish and wildlife. . . .

¶60 The City argues the definition of beneficial use applies only in the context of an appropriative permit. It argues the definition of beneficial use does not create a non-consumptive instream flow requirement. See O.A.C. § 785:20-1-1; O.A.C. § 785:20-1-2. We agree with the City. While an applicant may apply for a permit to appropriate water for a fishing pond or to water wildlife, general protection of environmental flows is not one of the statutory elements to be determined by the Board. See 82 O.S., § 105.12

¶61 Next, Petitioners cite to Franco-American Charolaise, Ltd. v. Oklahoma Water Resources Board, 1990 OK 44855 P.2d 568Franco-American Charolaise does not impact the result in this case, as it does not create a general requirement that water be left in a stream for fish and wildlife.

¶62 In conclusion, the hearing examiner did not err by excluding evidence from the United States Fish and Wildlife Service because environmental impacts are not a statutory or common law element to be considered by the OWRB when considering an application for stream water permit. In the same regard, the hearing examiner also did not err by not incorporating the testimony of Dr. Caryn Vaughn, Ph.D., regarding her work studying endangered mussels in the Kiamichi River. Importantly, Dr. Vaughn admitted she did not conduct an instream flow study and she did not offer an opinion on what a proper environmental flow would be based on if conducted by others.82 O.S., § 105.12

¶63 The district court properly affirmed the OWRB's order which correctly applied the Four Points of Law found in O.A.C. § 785:20-5-4. The OWRB's decision to grant the stream water permit under the terms contained in the order is based on substantial evidence in the record and contains no clear error that would prejudice the Petitioners.

CONCLUSION

¶64 We hold the district court had jurisdiction to review the OWRB's final order granting a stream water permit to the City and the district court's order denying Petitioners' challenge to the stream water permit is affirmed.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

CONCUR: Kane, C.J., Rowe, V.C.J., Winchester, Edmondson, Gurich, and Darby, JJ.

CONCURS IN PART; DISSENTS IN PART: Kauger, J. (by separate writing);

CONCUR IN RESULT: Combs and Kuehn (by separate writing), JJ.

FOOTNOTES

See, e.g., Davis v. Okla. Employ. Sec. Comm'n, 2010 OK 45238 P.3d 922Okla. Employ. Sec. Comm'n v. Carter, 1995 OK 74903 P.2d 868Edmondson v. Siegfried Ins. Agency, Inc., 1978 OK 45577 P.2d 72

See Klopfenstein v. Okla. Dep't of Human Servs., 2008 OK CIV APP 16177 P.3d 59475 O.S.2001, § 318Transwestern Pub., L.L.C. v. Langdon, 2004 OK CIV APP 2184 P.3d 804

Klopfenstein v. Oklahoma Department of Human Services, 2008 OK CIV APP 16177 P.3d 594Langdon, 2004 OK CIV APP 21agency was not named as a respondent. In Foundation, 2008 OK CIV APP 30 and H & En, 2006 OK CIV APP 70and that party was not served a copy of the petition as required by 75 O.S.2001, § 318

This case is clearly distinguishable from Foundation and H & En. The City is a party of record in the administrative proceeding (not the agency issuing the final agency order) that was not named as a respondent, and the City was served with a copy of the petition.

2. . . . [P]roceedings for review shall be instituted by filing a petition . . . within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

C. Copies of the petition shall be served upon the agency and all other parties of record, and proof of such service shall be filed in the court within ten (10) days after the filing of the petition. The court, in its discretion, may permit other interested persons to intervene.

75 O.S.2001, § 318

See supra note 5.

75 O.S.Supp.2013, § 250.3

See supra note 7.

See O.A.C. § 785:20-5-5(a)(2).

Touhy request for the testimony of Dr. Shannon Brewer, a U.S. Geological Survey employee affiliated with Oklahoma State University. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

See O.A.C. § 785:20-11-6.

82 O.S.2011, § 105.12

A. In order to protect the public welfare of the citizens of Oklahoma and before the Oklahoma Water Resources Board takes final action on the application, the Board shall determine from the evidence presented whether: . . .

4. If the application is for the transportation of water for use outside the stream system wherein the water originates, the proposed use must not interfere with existing or proposed beneficial uses within the stream system and the needs of the water users therein. In making this determination, the Board shall utilize the review conducted pursuant to subsection B of this section; and . . .

B.1. In the granting of water rights for the transportation of water for use outside the stream system wherein water originates, pending applications to use water within the stream system shall first be considered in order to assure that applicants within the stream system shall have all of the water required to adequately supply their beneficial uses.

2. The Board shall review the needs within the area of origin every five (5) years to determine whether the water supply is adequate for municipal, industrial, domestic, and other beneficial uses.

(emphasis added).

 

 

KAUGER, J., concurring in part/dissenting in part:

¶1 My dissent is directed to the failure to provide compliance with constitutional notice requirements. Notwithstanding any factual differences between Purcell v. Parker, 2020 OK 83475 P.3d 834Purcell is instructive and controlling regarding the necessity of proper notice. Even if statutory notice provisions are complied with, the notice given must also comply with constitutional due process requirements. It appears this was not done in this cause, and thus, this administrative proceeding and subsequent district court review, were invalid from the beginning.

¶2 The majority opinion notes, in ¶30 that:

Petitioners assert that the Kiamichi River Basin generally encompasses LeFlore, Latimer, Pushmataha, Pittsburg, Atoka, and Choctaw counties. It does not include McCuttain County. The City's notice by publication purportedly followed the requirements of 82 O.S. , § 105.1but not for LeFlore and Atoka counties. In paragraph 6 and 52 of the Final Order of October 10, 2017, the OWRB presumed that publication in local newspapers satisfied the constitutional protections of due process. . . (Emphasis supplied).

The City notice by publication purportedly followed statutory requirements for some, but not all of the landowners affected, and the OWRB presumed that this was satisfactory? It cannot be.

¶3 In Purcell, we very clearly explained that, even when statutory notice procedures were properly followed, the procedures must accord with fundamental due process. When a landowner's property interest is involved in the proceeding, notice by publication is insufficient when the actual whereabouts of the landowners are known or can be reasonably ascertainable. Anything less results in an unconstitutional exercise of jurisdiction insofar as the interest of the owner is affected. This applies to administrative proceedings as well as court proceedings. In this cause, even if some landowners did not receive any actual notice, but participated as a result of notice by publication, at least two counties were omitted from any notice whatsoever. No determination was made concerning who any of the actual landowners were, and whether they could have been given actual notice.

¶4 In Cate v. Archon Oil Co., Inc., 1985 OK 15695 P.2d 1352

1) Notice is a jurisdictional requirement and fundamental element of due process;
2) Due process requires adequate notice, a realistic opportunity to appear at a hearing, and the right to participate in a meaningful manner before one's rights are irretrievably altered;
3) The right to be heard is of little value unless adequate notice is given; and
4) Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise interested parties of the pendency of an action, and lack of notice constitutes a jurisdictional infirmity.

¶5 Similarly, in Dulaney v. Okla. State Dept. of Health, 1993 OK 113868 P.2d 676

¶18. . .The use and control of fresh water is a matter of publici juris, and of immediate local, national, and international concern. No commodity affects and concerns the citizens of Oklahoma more than fresh groundwater. . . These landowners' water-related property interest alone requires that they be given notice and an opportunity to participate in a hearing whose outcome could affect their constitutionally protected rights. . . .

¶6 In Harvey R. Carlile Trust v. Cotton Petroleum, 1986 OK 16732 P.2d 438

¶7 We held that the face of an administrative proceeding must affirmatively show a diligent but unsuccessful effort to reach the affected party by better process. Courts may not presume publication service alone to be constitutionally valid when the judgment roll or record of an administrative proceeding fails to show that the means of imparting better notice were diligently pursued but proved unavailable.

¶8 Under nearly forty years of our jurisprudence, the proceedings at issue here should be invalidated from the beginning. If you know how to find them, you have to tell them.

 

 

KUEHN, J., Concurring in Result:

¶1 I concur in the result reached by the Court. However, the Court squanders an opportunity to clarify the law on water rights. The parties cite Franco-American Charolaise, Ltd. v. Okla. Water Res. Bd., 1990 OK 44855 P.2d 568Franco-American, however, has been abrogated by amendments to the relevant statutes. I believe Franco-American was wrongly decided in the first place, but regardless, any doubts over its interpretation of law have since been dispelled by a clear expression of legislative intent. It is time to officially overrule Franco-American, declare the current statutes constitutional, and clear the waters for all Oklahomans.

¶2 The water-law battle between the Court and the legislature began in 1990, after this Court issued its decision in Franco-American. In 1963, our legislature reformed our State's water code.Franco-American, this Court determined the 1963 statutes did not abrogate the common-law riparian system, and therefore, limiting common-law riparian rights would constitute an impermissible taking of personal property without just compensation.reasonable use -- not just domestic use -- of water.

¶3 In 1993, the legislature responded to Franco-American with amendments to the water code. If the question posed by Franco-American was, "Did the legislature really mean to replace riparian law with an appropriations system?", then the 1993 statutory amendments provide a resounding "Yes." The remaining holding of Franco-American -- that the State's police power cannot extend to a riparian right without it being an unconstitutional taking -- should also be moot with the abrogation of riparian law.

¶4 Despite the 1993 amendments, this Court has passed on overruling Franco-American.82 O.S. §105.960 O.S. §60Franco-American was decided -- riparian rights are limited to domestic use (not reasonable use), and water not needed for domestic purposes "becomes public water and is subject to appropriation for the benefit and welfare of the people of the State."

¶5 Franco-American should be overruled. Even if that decision had been a sound interpretation of the water code as it existed in 1990, the 1993 amendments dispel any doubt about legislative intent. Second, the current statutes, 60 O.S. § 6082 O.S. § 105.1Adomestic use is not harmed. If it is, no permit. If it is not, then there logically has been no improper "taking" of private property. Once a riparian owner has reaped the benefits of all domestic use, and first-in-time, first-in-right appropriated owners prove their needs and those needs are met, only then is there "unappropriated water." That water belongs to the citizens of Oklahoma.

¶6 The legislature has a right to use its police powers to protect the welfare of its citizens, including their need for a natural resource as fundamental as water. It makes no sense to argue that a riparian or appropriated owner has a right to be compensated for unappropriated water. Imagine a landowner who dams a natural lake or tributary, and charges whatever compensation they desire for that natural resource they have in abundance? Citizens and towns, especially those without monetary resources, would suffer tremendously. "Property often comes in the form of a bundle of entitlements, but the 'destruction of one strand of the bundle is not viewed as a taking because the aggregate must be viewed in its entirety."

¶7 We presume that statutes are constitutional. Lee v. Bueno, 2016 OK 97381 P.3d 736Franco-American is not good law.

FOOTNOTES

60 O.S. § 60

" Gary D. Allison, Franco-American Charolaise: The Never Ending Story, 30 Tulsa L.J. 1, 59 (1994).

Franco-Am. Charolaise, Ltd. v. Okla. Water Res. Bd., 1990 OK 44855 P.2d 568

Id.

Id. ¶ 2, 855 P.2d at 571.

See H. Cole Marshall, Clear As Mud: How Heldermon v. Wright Missed an Opportunity to Clarify Oklahoma's Murky Water Law, 61 Okla. L. Rev. 843 (2008); Gary D. Allison, Oklahoma Water Rights: What Good Are They?,- 64 Okla. L. Rev. 469 (2012).

Clear As Mud: How Heldermon v. Wright Missed an Opportunity to Clarify Oklahoma's Murky Water Law, 61 Okla. L. Rev. 843, 856 (2008).

Id.

" (a) Elements of statute. Before taking final action on the application, the Board shall determine from the evidence presented whether:

(1) Unappropriated water is available in the amount applied for [82:105.12(A)(1)] (as set forth in 785:20-5-5(a) and (b));
(2) The applicant has a present or future need for the water and the use to which applicant intends to put the water is a beneficial use. In making this determination, the Board shall consider the availability of all stream water sources and such other relevant matters as the Board deems appropriate, and may consider the availability of groundwater as an alternative source [82:105.12(A)(2)] as set forth in 785:20-5-5(c);
(3) The proposed use does not interfere with domestic or existing appropriative uses [82:105.12(A)(3)] as set forth in 785:20-5-5(d); and
(4) If the application is for the transportation of water for use outside the stream system wherein the water originates, [82:105.12(A)(4)] the provisions of Section 785:20-5-6 are met."...

supra note 2, at 56 (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992) and Keystone Bituminous Coal Assn. v. DeBenedictus, 480 U.S. 470, 497 (1987)).